## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>LUCILO CABRERA | No. 3:16-cr-238 (SRU) |

## ORDER

On March 9, 2018, a jury found Lucilo Cabrera guilty of kidnapping, Hobbs Act

extortion, and conspiracy to commit those two crimes.[1]  *See* Verdict, Doc. No. 225.  On

December 9, 2019, I held a sentencing hearing and sentenced Cabrera to 135 months'

imprisonment.  *See* Min. Entry, Doc. No. 376; Judgment, Doc. No. 380 (entered on Jan. 21,

2020).  On December 13, 2019, Cabrera filed a notice of appeal.  *See* Notice of Appeal, Doc. No.

378.  Cabrera's appeal remains pending.

Currently 48 yeas old, Cabrera is housed at the Federal Correctional Institution, Beckley

("FCI Beckley").  *See Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/

(last visited Apr. 27, 2021).  Cabrera's scheduled release date is January 21, 2027.  *See id.*

Because Cabrera has been incarcerated since his arrest in June 2017, he has served about four

years in prison, which is around 40 percent of his sentence (accounting for good-time credit).

While his appeal has been pending, Cabrera has made several attempts to be released

from custody.  In early May 2020, Cabrera filed a *pro se* motion for temporary release from

detention during the pendency of his appeal.  *See* Mot. for Temporary Release, Doc. No. 394, at

---

[1]     More specifically, Cabrera was convicted of two counts of kidnapping, in violation of 18 U.S.C. §§
1201(a)(1) and 2; three counts of Hobbs Act extortion, in violation of 18 U.S.C. §§ 1951(a) and 2; one count of
conspiracy to commit kidnapping, in violation of 18 U.S.C. § 1201(c); and one count of conspiracy to commit
Hobbs Act extortion, in violation of 18 U.S.C. § 1951(a).  *See* Verdict, Doc. No. 225; Superseding Indictment, Doc.
No. 141.

1.  After counsel was appointed for Cabrera and the motion was fully briefed, I issued a written order on May 27 denying Cabrera's motion, which I construed as a motion for release pursuant to 18 U.S.C. § 3145(c).  *See* Order, Doc. No. 399.  The following day, Cabrera's appointed counsel filed a motion for reconsideration.  *See* Mot. for Reconsid., Doc. No. 400.  After briefing and a Zoom hearing, on July 13, I denied Cabrera's motion for reconsideration.  *See* Order, Doc. No. 411; *United States v. Cabrera*, 2020 WL 3963887 (D. Conn. July 13, 2020).

On December 3, 2020, Cabrera filed a *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c).  *See* Cabrera *pro se* Mot. for Release, Doc. No. 413.  In March 2021, appointed counsel supplemented Cabrera's motion for release (including by requesting a reduction in sentence, even if I found that release was unwarranted), and the government opposed it.  *See* Mem. in Supp. Cabrera *pro se* Mot. for Release, Doc. No. 421 ("Cabrera's Mem. of Law"); Gov't Opp'n, Doc. No. 424.[2]  As discussed further below, I currently do not have jurisdiction to grant Cabrera's motion because Cabrera's appeal remains pending.  However, Cabrera argues that I should still issue an indicative ruling explaining that, if I had jurisdiction, I would grant Cabrera relief.  The government asks me to deny Cabrera's motion.  For the following reasons, I **deny** Cabrera's motion and decline to alter his sentence.

## I.     Standard of Review

### A.     Jurisdiction over this Motion

Since December 13, 2019, Cabrera's criminal appeal has been pending before the Second Circuit.[3]  As other district courts have observed, when an inmate makes a motion for reduction in sentence while that inmate's appeal is pending, the district court lacks jurisdiction to grant the

---

[2]        In December 2020, the government also filed an opposition to Cabrera's *pro se* motion for release.  *See* Gov't *pro se* Opp'n, Doc. No. 417.  However, the government represents that its more recent opposition to Cabrera's counseled memorandum of law "supersedes the government's prior brief."  Gov't Opp'n, Doc. No. 424, at 2 n.1.

[3]        According to CM/ECF, oral argument in Cabrera's case (20-346) is scheduled for May 12, 2021.

motion.  *See, e.g.*, *United States v. Martin*, 2020 WL 1819961, at *1 (S.D.N.Y. Apr. 10, 2020).

That is because "[t]he filing of a notice of appeal is an event of jurisdictional significance—it

confers jurisdiction on the court of appeals and divests the district court of its control over those

aspects of the case involved in the appeal."  *Griggs v. Provident Consumer Disc. Co.*, 459 U.S.

56, 58 (1982).  Even though I lack jurisdiction over Cabrera's motion, Federal Rule of Criminal

Procedure 37 explains that there are still three actions I might take.  Rule 37 provides:

> **(a) Relief Pending Appeal.**  If a timely motion is made for relief that the court
> lacks authority to grant because of an appeal that has been docketed and is
> pending, the court may:
>
> > **(1)** defer considering the motion;
> >
> > **(2)** deny the motion; or
> >
> > **(3)** state either that it would grant the motion if the court of appeals remands
> > for that purpose or that the motion raises a substantial issue.

Fed. R. Crim. P. 37(a).  The advisory committee's note to Rule 37 specifically envisions that

those three options would be available to a district court in the precise situation presented in this

case.  *See* Fed. R. Crim. P. 37(a) advisory committee's note to 2012 amendment ("In the criminal

context, the Committee anticipates that Criminal Rule 37 will be used primarily if not

exclusively for newly discovered evidence motions under Criminal Rule 33(b)(1) . . . , reduced

sentence motions under Criminal Rule 35(b), and motions under 18 U.S.C. § 3582(c).").

Accordingly, I "lack jurisdiction to grant a motion for sentence reduction under Section

3582(c) where an appeal is pending," but I may deny it or defer ruling on it.  *United States v.*

*Hamlett*, 2021 WL 406440, at *2–3 (D. Conn. Feb. 5, 2021) (citing cases).  Indeed, the parties

agree that that is the extent of my authority.  *See* Cabrera's Mem. of Law, Doc. No. 421, at 1–2;

Gov't Opp'n, Doc. No. 424, at 6–7.  In the interest of judicial economy, district courts have not

hesitated to deny motions for reductions in sentence filed by inmates with appeals pending when

relief is not warranted on the merits.  *See, e.g.*, *Hamlett*, 2021 WL 406440, at *4; *Martin*, 2020 WL 1819961, at *2; *United States v. Ruiz*, 2021 WL 1085715, at *1–2 (S.D. Cal. Mar. 22, 2021); *United States v. McIntyre*, 2021 WL 1015864, at *1 (W.D.N.Y. Mar. 17, 2021); *United States v. Cueto*, 2021 WL 621188, at *2 (S.D.N.Y. Feb. 17, 2021).

       B.      <u>Section 3582(c)(1)(A) Standard</u>

       The First Step Act of 2018 (the "FSA") amended the language of section 3582(c)(1)(A). Before the FSA, only the Director of the Bureau of Prisons (the "BOP") could make a motion for the court to reduce a defendant's sentence based on extraordinary and compelling reasons.  It is widely acknowledged that the BOP fell short in its gatekeeper role and that, as a result, too few inmates were granted compassionate release.  *See, e.g.*, U.S. Dep't of Justice, Office of the Inspector General, Evaluation and Inspections Division, *The Federal Bureau of Prisons' Compassionate Release Program* i (April 2013), https://oig.justice.gov/reports/2013/e1306.pdf ("[W]e found that the existing BOP compassionate release program has been poorly managed and implemented inconsistently, likely resulting in eligible inmates not being considered for release and in terminally ill inmates dying before their requests were decided."); Shon Hopwood, *Second Looks & Second Chances*, 41 CARDOZO L. REV. 83, 105–06 (2019); William W. Berry III, *Extraordinary and Compelling: A Re-Examination of the Justifications for Compassionate Release*, 68 MD. L. REV. 850, 868 (2009) (noting that, in the 1990s, 0.01 percent of inmates annually were granted compassionate release).

       Congress passed the FSA against that backdrop.  The FSA altered section 3582(c)(1)(A), in part, to increase the use of compassionate release.  *See* 164 Cong. Rec. H10358 (daily ed. Dec. 20, 2018) (titling changes to section 3582(c)(1)(A) as "Increasing the Use and Transparency of Compassionate Release").  In particular, the FSA amended section 3582(c)(1)(A) to allow a

defendant him- or herself to bring a motion for a sentence reduction.  Section 3582(c) now reads, in relevant part:

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that – (1) in any case –
>
>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –
>>
>>> (i)  extraordinary and compelling reasons warrant such a reduction; . . .
>>
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Until recently, I (and many other district courts around the country) interpreted the "applicable policy statement[] issued by the Sentencing Commission" to be U.S.S.G. § 1B1.13.  *See, e.g.*, *United States v. Almontes*, 2020 WL 1812713, at *2 (D. Conn. Apr. 9, 2020).

However, in September 2020, the Second Circuit clarified that section 1B1.13 is *not applicable* to motions for sentence reductions brought by defendants themselves.  *See United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020).  Since the Second Circuit decided *Brooker*, several courts of appeals in other circuits have concurred that section 1B1.13 is not applicable to motions for sentence reductions brought by defendants.  *See United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *United States v. Shkambi*, 2021 WL 1291609, at *4 (5th Cir. Apr. 7, 2021); *United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *United States v. Aruda*, 2021 WL 1307884, at *4 (9th Cir. Apr. 8, 2021); *United States v. McGee*, 992 F.3d 1035, 1050 (10th Cir. 2021).  Because in this case

Cabrera himself made a motion for a reduction in sentence, I may "consider the full slate of extraordinary and compelling reasons," and nothing in the "now-outdated version" of section 1B1.13 limits my discretion. *Brooker*, 976 F.3d at 237.

The defendant bears the burden of proving that he is entitled to a sentence reduction. *See United States v. Morales*, 2020 WL 2097630, at *2 (D. Conn. May 1, 2020). Courts "have broad discretion in deciding whether to grant or deny a motion for a sentence reduction." *United States v. Jones*, 2020 WL 2782395, at *2 (D. Conn. May 29, 2020) (quoting *United States v. Tagliaferri*, 2019 WL 6307494, at *3 (S.D.N.Y. Nov. 25, 2019)). Indeed, section 3582(c)(1)(A) grants a district court permissive authority to reduce an inmate's sentence under certain conditions. *See* 18 U.S.C. § 3582(c)(1)(A) ("[T]he court . . . may reduce the term of imprisonment . . . ."). A court may not reduce a term of imprisonment without "considering the factors set forth in section 3553(a) to the extent that they are applicable." *Id.*; *see also United States v. Torres*, 464 F. Supp. 3d 651, 658 (S.D.N.Y. 2020) (explaining that courts must consider section 3553(a) factors before granting a sentence reduction pursuant to section 3582(c)(1)(A)).

## II. Discussion

### A. The Parties' Arguments[4]

Cabrera argues that extraordinary and compelling reasons warrant his release, or at least a reduction in his sentence. First, Cabrera focuses on medical conditions that, in his view, put him

---

[4] Although Cabrera may not have satisfied section 3582(c)(1)(A)'s exhaustion requirement before filing his *pro se* motion in December 2020, the government did "not seek to enforce" the requirement at that time because Cabrera was detained at a facility (Donald W. Wyatt Detention Facility) that did "not handle compassionate release requests." Gov't *pro se* Opp'n, Doc. No. 417, at 5. Before filing a supplemental memorandum in support of Cabrera's *pro se* motion, Cabrera's counsel sought administrative relief, which was denied on January 28, 2021. Correspondence with BOP, Ex. C to Cabrera's Mem. of Law, Doc. No. 421-1. Thus, Cabrera has now satisfied section 3582(c)(1)(A)'s exhaustion requirement. Even if he had not, though, I would not deny his motion on that basis. As I have explained elsewhere, section 3582(c)(1)(A)'s exhaustion requirement is not a jurisdictional requirement, but, rather, a mandatory claims-processing rule; thus, it is subject to waiver. *See United States v. Leigh-James*, 2020 WL 4003566, at *6 (D. Conn. July 15, 2020). Because the government makes no argument regarding exhaustion, it has waived any such argument.

at risk of severe illness from COVID-19, should he contract the virus.  According to Cabrera, those medical conditions are:  (1) Type 2 diabetes mellitus, (2) obesity, and (3) hypertension. *See* Cabrera's Mem. of Law, Doc. No. 421, at 6–11; *see also* BOP Medical Records, Doc. No. 423-1, at 3 (type 2 diabetes); 7 (hypertension); 58 (weight readings indicating obesity).  Cabrera does not discuss the effect of COVID-19 vaccinations on his argument.

Next, Cabrera asserts that the conditions of his confinement during the pandemic have been "much more punitive" than intended and so warrant a reduction in sentence.  Cabrera's Mem. of Law, Doc. No. 421, at 11–14.  Finally, Cabrera states that reducing his sentence would be consistent with the section 3553(a) sentencing factors.  *See id.* at 14–16.  According to Cabrera, a sentence shorter than 135 months would provide just punishment and achieve adequate deterrence primarily due to the harsh conditions of Cabrera's confinement.  *See id.* at 14–15 ("[T]here is in reality more punishment and deterrence in Mr. Cabrera's everyday existence than what would have been expected when the Court sentenced him.").  Cabrera also notes that he is deserving of a reduction in sentence because he has expressed remorse for this crime in comments at his sentencing hearing, had no prior convictions, did not use violence in this case, and has so far been a model prisoner.  *See id.* at 15–16.

The government takes a different view.  First, the government argues that Cabrera has not shown that extraordinary and compelling reasons warrant a sentence reduction.[5]  To be sure, the government "agrees that Cabrera's type 2 diabetes and obesity increase his risk for severe COVID-19 illness."  Gov't Opp'n, Doc. No. 424, at 7.  But the government claims that the

---

[5]     In his counseled supplemental brief, Cabrera notes that "the government concedes that Mr. Cabrera has established" extraordinary and compelling reasons warranting a sentence reduction.  Cabrera's Mem. of Law, Doc. No. 421, at 6.  However, Cabrera's argument relies on the government's position in its December 2020 opposition to Cabrera's *pro se* motion for relief.  As the government notes, it no longer makes that concession.  *See* Gov't Opp'n, Doc. No. 424, at 2 n.1 (explaining that the "government's position on this point has changed since December" because, since then, "BOP has begun administering the vaccine, and Cabrera was transferred from Wyatt to Beckley").

diminished threat of contracting COVID-19 in BOP custody means that Cabrera's medical conditions do not present an extraordinary and compelling reason warranting relief. More specifically, the government points to "BOP's ongoing administration of the COVID-19 vaccine" in general and "Beckley's current success in preventing the spread of the virus" in particular. *Id.* at 8. At the time the government filed its opposition brief (March 22, 2021), FCI Beckley had inoculated half of its staff and about seven percent of its inmate population. *See id.* Cabrera had not yet received the vaccine, but the government represented that it would be available imminently. *See id.* Also on March 22, FCI Beckley had just seven positive cases. *See id.* at 9. (Today, according to the BOP, FCI Beckley has one positive case.[6]) To the extent that Cabrera relies on the harsh conditions of his confinement as a factor contributing to an extraordinary and compelling reason, the government argues that those conditions are common to all inmates and, indeed, many non-incarcerated persons. *See id.* at 9–10.

Second, the government contends that the section 3553(a) sentencing factors also counsel against relief. The government focuses particularly on the seriousness of Cabrera's offenses and Cabrera's lack of remorse. *See id.* at 10. Although the government concedes that it is Cabrera's "prerogative" not to show remorse for his crimes while his appeal is pending, the government points out that, on appeal, Cabrera's position is not that he is innocent but, rather, that he committed fraud and larceny, rather than kidnapping and extortion. *See id.* at 11. In the government's view, Cabrera's position on appeal still "presents some opportunity for non-prejudicial self-reflection, which Cabrera has not taken." *Id.* The government also distinguishes the cases on which Cabrera relies to support his argument that the harsh conditions of his confinement justify a shorter sentence. *See id.* at 11–12 (distinguishing on several grounds

---

[6]     *See COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Apr. 27, 2021).

*United States v. Rodriguez*, 492 F. Supp. 3d 306 (S.D.N.Y. 2020); *United States v. Lizardi*, 2020 U.S. Dist. LEXIS 188147 (S.D.N.Y. Oct. 9, 2020); and *United States v. Henareh*, 2021 WL 119016 (S.D.N.Y. Jan. 13, 2021)).  In the government's view, although a "modest reduction" in Cabrera's sentence "might hypothetically balance out" the harsh conditions of his confinement, "the compassionate release statute is not a mechanism for fine-tuning sentences with the benefit of hindsight." *Id.* at 12.  Thus, "even a modest reduction that is consistent with the section 3553(a) factors would not be appropriate." *Id.*  The government notes that I have already considered the other factors that Cabrera cites in his support, such as the facts that he has no prior convictions, employed no violence in this case, and has been a good prisoner. *See id.* at 12–13.

    B.  <u>Evaluation</u>

    I will not reduce Cabrera's sentence because doing so would not comply with the purposes of sentencing as set forth in 18 U.S.C. § 3553(a).

    Although I need not (and do not) decide whether Cabrera has established extraordinary and compelling reasons warranting relief based on some combination of his medical conditions, I note a couple salient weaknesses in Cabrera's arguments.  First, Cabrera does not address the effect of COVID-19 vaccinations or the status of infections at his particular place of imprisonment.  In my view, the proliferation of COVID-19 vaccinations within the BOP—and the fact that Cabrera himself will soon receive one (if he has not already)—diminishes the risk that even medically vulnerable prisoners, such as Cabrera, face. *See, e.g.*, *United States v. Ferguson*, 2021 WL 1105228, at *3–4 (D. Conn. Mar. 23, 2021) (denying relief to 63-year-old, pre-diabetic inmate with hypertension based, in part, on facts that cases were low at his place of incarceration and approximately 20 percent of inmate population there had been vaccinated);

*United States v. Ricketts*, 2021 WL 917068, at *1 (D. Conn. Mar. 10, 2021) (holding that no extraordinary and compelling reasons existed, in part, because "with fellow inmates now being vaccinated, [the defendant's] risk of reinfection is diminishing"). It is also significant that the COVID-19 situation at FCI Beckley appears to be under control, with just one positive case as of today. *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Apr. 27, 2021).

Second, it is significant that Cabrera has so far served just 40 percent of the sentence I imposed. In evaluating motions for reduction in sentence, courts routinely consider the fraction of a sentence that the defendant has already served in determining whether extraordinary and compelling reasons exist. *See, e.g.*, *United States v. Wooten*, 2020 WL 6119321, at *4 (D. Conn. Oct. 16, 2020). In general, the shorter the amount of time remaining on a defendant's sentence, the more likely a court may be to find that the defendant has established extraordinary and compelling reasons warranting a reduction in sentence. *See United States v. Perez*, 451 F. Supp. 3d 288, 294 (S.D.N.Y. 2020) (explaining that, given the threat of COVID-19, when a defendant has a small fraction of his sentence remaining, "[t]he benefits of keeping him in prison for the remainder of his sentence are minimal, and the potential consequences of doing so are extraordinarily grave"). In denying motions for relief brought by inmates who—like Cabrera— have served less than half of their carceral sentences, courts frequently comment on that fact. *See, e.g.*, *United States v. Sublett*, 2021 WL 1233521, at *7 (W.D. Ky. Apr. 1, 2021) (noting, in section 3553(a) analysis, that the defendant had served "around 37 percent" of his sentence); *United States v. Tatar*, 2020 WL 6482706, at *4 (D.N.J. Nov. 2, 2020) (noting, in section 3553(a) analysis, that the defendant had "served less than half of his thirty-year sentence").

In any event, I need not resolve whether extraordinary and compelling reasons warrant a reduction in Cabrera's sentence because I hold that reducing Cabrera's sentence would result in a sentence insufficient to achieve the purposes of sentencing. Pursuant to section 3553(a), I must impose a sentence that is sufficient, but not greater than necessary, to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (2) afford adequate deterrence, (3) protect the public from further crimes of the defendant, and (4) provide the defendant with training, medical care, and other treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). I must also consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* § 3553(a)(6). And I must examine other factors, including the nature and circumstances of the offense and the history and characteristics of the defendant. *See id.* § 3553(a)(1).

On balance, the section 3553(a) factors strongly indicate that Cabrera's current sentence is the shortest sentence sufficient to serve the purposes of sentencing. Most importantly, this offense was extremely serious, and that seriousness has not changed since I sentenced Cabrera in December 2019. In this case, Cabrera and his co-defendants engaged in a scheme designed to trick certain illegal immigrants who arrived at the Port Authority in New York City on the way to reunite with their families in Connecticut. *See generally* Ruling on Mots. for New Trial and/or Judgments of Acquittal, Doc. No. 305. Cabrera and his co-defendants would identify those immigrants, approach them, "take their bus tickets, and misinform them that they had missed their bus to Connecticut and/or had arrived in the wrong place." *Id.* at 3. Cabrera and his co-defendants would then offer to take the immigrants to their ultimate destination via "taxi." *See id.* Once they had arrived, Cabrera or his co-defendants would demand "taxi fares" of around $1,000. *See id.*

11

As I remarked at Cabrera's sentencing, "these are very serious crimes."  Sentencing Hr'g

Tr., Doc. No. 406, at 24:9.[7]  I explained:

> Not only were the victims vulnerable, but you targeted them because they were
> vulnerable.  You looked for people who would be unlikely to report to the
> authorities for fear of deportation, and you thought it was a great plan.  This is how
> I can get away with it.  No one will ever tell.  And I think that's conduct that
> warrants a serious punishment.

*Id.* at 24:9–15.  It also bears mentioning that the sentence I imposed in this case was a

substantially below-Guidelines sentence:  The Guidelines called for a sentence of 360 months to

life imprisonment.  *See* PSR, Doc. No. 352, at ¶ 104.[8]  Put simply, reducing Cabrera's sentence

would not adequately reflect the seriousness of the offense, promote respect for the law, and

provide just punishment.  *See* 18 U.S.C. § 3553(a)(2)(A).

Relatedly, a sentence shorter than 135 months would also be insufficient to protect the

public and to afford adequate deterrence.  Importantly, Cabrera continued to engage in the

scheme at issue in this case even after two of his co-defendants—Francisco Betancourt and

Carlos Antonio Hernandez—were arrested in December 2016.  At Cabrera's sentencing hearing,

I explained why that caused me concern:

> [W]hen they were arrested, it was a chance for you to wake up and stop.  It should
> have brought home to you that what you were doing was not only wrong but was
> illegal.  And apparently it didn't.  So I think that's very concerning as well.

Sentencing Hr'g Tr., Doc. No. 406, at 24:23–25:2; *see also* Judgment, Doc. No. 380 (explaining

that Cabrera "repeatedly engaged in similar conduct for years, harming many victims, even after

---

[7]       In fact, I remarked at the sentencing hearing of one of Cabrera's co-defendants:  "This is one of the most
serious offenses I've seen as a judge."  Rodriguez Sentencing Hr'g Tr., Doc. No. 318, at 43:16–17.  And I also
remarked:  "[W]e can talk about other factors in 3553(a), but the dominant consideration here is the seriousness of
the conduct, the wrongfulness of the conduct and the dramatic impact it had on those who were the victims."  *Id.* at
44:11–15.
[8]       The government conceded, though, that a Guidelines sentence in this case would have been "more than
necessary to sufficiently meet the goals of sentencing."  Gov't Sentencing Mem., Doc. No. 371, at 1.

his co-defendants were arrested").  Because even his co-defendants' arrests did not deter

Cabrera, a substantial and meaningful sentence is necessary to do so.

Cabrera's apparent lack of remorse is also relevant in that regard.  Cabrera's position is

that, while his appeal is pending, it "would not be appropriate to make additional comments"

acknowledging remorse for his crimes.  Cabrera's Mem. of Law, Doc. No. 421, at 15.  But it still

bears mentioning that, at several points after his conviction in this case, Cabrera has displayed a

lack of remorse.  *See* PSR, Doc. No. 352, at ¶ 39 (Cabrera deflecting responsibility and saying:

"We never kidnapped those people"); Sentencing Hr'g Tr., Doc. No. 406, at 16:25–17:1 (Cabrera

commenting that "seeing how [the victims] are feeling, I am feeling worse, Your Honor");

Judgment, Doc. No. 380, at 1 ("Cabrera has shown a lack of remorse.").[9]  Reducing Cabrera's

sentence would not sufficiently protect the public or afford adequate deterrence.  *See* 18 U.S.C. §

3553(a)(2), (a)(3).

Finally, reducing Cabrera's sentence would create an unwarranted sentencing disparity

between Cabrera and his co-defendants.  In this case, I tried to calibrate the sentences of the four

co-defendants according to their relative blameworthiness and culpability.  *See* Sentencing Hr'g

Tr., Doc. No. 406, at 24:16–25:21 (discussing where Cabrera "fall[s] in the scheme of things vis-

à-vis your co-defendants" and explaining that, in my view, Cabrera was not "the worst of these

four, but you are not the least of this four," either).  And, indeed, Cabrera's sentence fell in the

middle of the relevant range:  I sentenced Francisco Betancourt to 168 months' imprisonment,

Cabrera and Pascual Rodriguez to 135 months', and Carlos Antonio Hernandez to 96 months'.

---

[9]      Cabrera has, at times, apologized and expressed some measure of remorse.  *See, e.g.*, Sentencing Hr'g Tr.,
Doc. No. 406, at 16:13–24 (apologizing); *id.* at 25:3–7 (remarking that Cabrera's letter to me in advance of
sentencing was "the first time that I'm aware of that you expressed any remorse for what you did").  But many of
those ostensibly remorseful comments appear in passages that are, on balance, not remorseful and do not indicate
that Cabrera has yet accepted responsibility for the very serious crimes he committed.

*See* Judgments, Doc. Nos. 315 (Rodriguez); 360 (Betancourt); 361 (Hernandez; noting specifically that "Hernandez is less culpable than his co-defendants"); and 380 (Cabrera). Reducing Cabrera's sentence would create an unwarranted disparity "among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).

Finally, Cabrera's arguments about mitigating circumstances do not persuade me.  To be sure, certain aspects of this offense and Cabrera's personal characteristics—most especially that Cabrera has no prior criminal record and used no violence in this case—cut somewhat in Cabrera's favor.  But in imposing a 135-month sentence, I already considered those factors.  *See* Sentencing Hr'g Tr., Doc. No. 406, at 25:8–18 (discussing Cabrera's lack of a criminal history and that he used no violence in these crimes); *see also* Judgment, Doc. No. 380 (noting those two facts as "[m]itigating factors").  Thus, considering the nature and circumstances of the offense and the history and characteristics of the defendant does not alter my conclusion that a sentence shorter than 135 months' imprisonment would result in a sentence insufficient to achieve the purposes of sentencing.  *See* 18 U.S.C. § 3553(a)(1).

## III.    Conclusion

For the foregoing reasons, Cabrera's motion for a reduction in sentence, doc. no. 413, is **denied**.  Cabrera's motion to seal his medical records, doc. no. 422, is **granted**.  When Cabrera filed his *pro se* motion for relief, he also filed three other motions.  *See* Mot. for Medical Records, Doc. No. 414; Mot. for Temporary Release, Doc. No. 415; Mot. to Appoint Counsel, Doc. No. 416.  In his counseled memorandum of law, Cabrera reports that he has "decided to pursue only one of those motions—the Motion for Compassionate Release."  Cabrera's Mem. of Law, Doc. No. 421, at 1 & n.1 (recognizing that the motions for medical records and appointment of counsel are moot and withdrawing the motion for temporary release).  Thus,

Cabrera's motion for medical records (doc. no. 414), his motion for appointment of counsel (doc.

no. 416), and his motion for temporary release (doc. no. 415), are all **denied as moot**.


IT IS SO ORDERED.

Dated at Bridgeport, Connecticut, this 27th day of April 2021.


/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge